Good morning, and may it please the Court. My name is Gabriel Hawkins. I represent plaintiffs in this appeal, and plaintiffs ask that this Court reverse the District Court's entry of summary judgment, because there is ample evidence in the record from which a reasonable jury could conclude that KBR's act of knowingly exposing Allied soldiers to the most potent it is the law of this circuit that a District Court may not enter summary judgment on grounds not raised by the parties without affording the parties an adequate and reasonable opportunity to respond to those sua sponte grounds. Tellingly, and notwithstanding the fact that plaintiffs prominently made this argument in their appellant's brief, KBR's response brief does not dispute that the District Court's grounds for reversal were raised sua sponte, and does not dispute that there is evidence in the record contradicting the District Court's sua sponte dismissal. Had the plaintiffs been afforded a reasonable opportunity to respond to these sua sponte grounds, they not only would have presented argument demonstrating that Dr. Carson, their and his causation opinion, but perhaps more importantly, would have designated considerably more evidence from Dr. Carson's six days of deposition testimony showing that he took the relationship between exposure categories and his causation opinion into account. Did you raise any of that in any kind of a Rule 59 motion? We did, Your Honor. We moved to reconsider on the basis that it was raised sua sponte. The District Court denied the motion, not on its merits. Did you, excuse me, I don't mean to cut you off in mid-sentence, but did you raise in your Rule 59 motion all of the points that you just gave us? We did. We pointed out that if we had this opportunity, we would present more evidence and we pointed out that, in fact, notwithstanding not having the opportunity, as a matter of happenstance, there happened to be evidence in the record contradicting the District Court's determination. So is part of your argument, I just want to be sure I understand, that had you had notice of a motion for summary judgment, you would have asked under Rule 56D for additional discovery? Not discovery, no. It would have been simply a matter of designated evidence from the discovery. We had it. There certainly is discovery. We had evidence at our disposal. The problem we had, Your Honor, is since we didn't know that the argument was being made, we didn't have an opportunity to designate the evidence. We contend that there's an abundance of evidence showing that that consideration is simply wrong. To that end, KBR's attorneys, they're excellent attorneys, they filed nine motions for summary judgment, two motions to dismiss, several Dalbert motions. The reason that those attorneys didn't raise this argument is because they knew it had no merit. If this argument had any merit, you could bet that KBR would have raised it. Secondly, and consistent with the fact that the district court determined that plaintiff's expert, Dr. Carson, withstood Dalbert's scrutiny, KBR is inaccurate in its contention that the case of Havner required Dr. Carson to present epidemiological evidence rather than a differential diagnosis in support of his opinion. Tellingly, the case of Havner does not even include the phrase, differential diagnosis. And perhaps more importantly, Havner was issued in 1997, I believe. Since that time, there have not only been numerous cases applying Texas law that have blessed the use of a differential diagnosis, but several of those cases even cite Havner in the underlying opinion. Now, in fairness to KBR, they do cite cases that reject a differential diagnosis relying upon Havner, but those cases are circumstances in which there is no preexisting scientific evidence establishing that the toxin in question is capable of causing the injury in the general population. The reverse is true here, and the district court specifically recognized that it is well understood that sodium dichromate is capable of causing plaintiff's injuries. In fact, supporting the district court's determination, KBR's own expert recognizes that yes, in the general population, we know that sodium dichromate is capable of causing these injuries. Similarly, plaintiff's expert Dr. Carson and plaintiff's expert Dr. Gibb, whom KBR readily recognizes as one of the most preeminent epidemiologists in sodium dichromate exposure in the country, says science has known for the last 50 years that sodium dichromate is capable of causing these injuries. So with the court's permission, I'd like to shift focus a little bit to KBR's just disability contentions. Central to KBR's political question doctrine invocation is their contention that we have to make this hypothetical determination of whether the trial of this case and the jury will force and make a certain and inextricable link where a jury has to determine the government's fault or responsibility in this case. I would submit to the court that this determination or this speculation is unnecessary, and the reason that speculation is unnecessary is because four years ago to the day, a federal jury determined that KBR was liable for its fault. And why that's important is because I'd submit to the court if there was any aspect of that trial where the jury sat in review of the executive and determined or apportioned the executive's fault in determining causation, it would be before the court here today. KBR would have designated to both the district court and we'd be seeing it here again today. So with that in mind, I think it's useful to take a look at KBR's specific contentions that its causation defense will force us to consider the responsibility of the executive. KBR rightfully states that the Department of Defense Inspector General concluded that the military played a role in the causation of plaintiff's exposure. This is specifically what the Department of Defense said. Contractor recognition of and response to the health crisis was delayed. The delay occurred because KBR did not fully comply with the applicable occupational OSHA standards required by the contact, and Task Force Rio, i.e., the government, failed to enforce contractor compliance. Your Honors, I would submit to the court that that causation defense is akin to a car accident tort feasor saying, no, the reason that accident was caused was not my knowledge that I was speeding, but it was the failure of the police to set more effective speed traps. That's KBR's causation defense. But let's assume for a moment that KBR's causation defense is viable. What it would require a jury to do is not determining the government's reasonableness or fault in failing to enforce the contractual requirements. It would require a reasonable jury to determine whether the government's decision to exclude the plaintiffs from establishing that KBR was a proximate cause of their injuries. As the Third Circuit in Harris, the Fourth Circuit in Burn Pit, and this court impliedly in the previous appeal of this case indicated, that's not sufficient to render a case non-justiciable under the political question doctrine. That leads us to KBR's responsible third party invocation. They say even if we take away Harris, we take away Burn Pit, we still have the matter of responsible third party. And as I'm sure the court is aware, the district court declined KBR's invocation to designate the government as responsible third party. I think it's pretty telling, because in KBR's brief, they failed to cite the entire responsible third party statute. Because in that statute, it specifically indicates a predicate thereof to be a responsible third party is the responsible third party must be applicable to a negligence, product liability, or some other quote unquote applicable legal standard. And why that's significant is, and I'm quoting on page 22 of KBR's brief, it specifically says, after talking about their causation determinations, there are no discoverable and manageable standards for evaluating them. And again, this wasn't a mistake on KBR's part. Again, they're very good attorneys. That comes from this court's analysis in Lane. There are numerous other courts throughout the country that recognize that there are not applicable legal standards for judging and adjudicating this kind of military conduct. And even the en banc de set in this case made that recognition, that there are not these applicable legal standards in which we could sit in judgment of the military conduct. The second example I would like to take from KBR's causation defense is its statement in its brief, where KBR says, despite knowing of potential sodium dichromate contamination, the military decided to continue restoration work against the contrary recommendations of United States Army Corps of Engineers safety officers. When you read that contention, you might say to yourself, wow, that's a pretty formidable causation defense. The military knew about the sodium dichromate and decided to go forward, notwithstanding. What encouraged the court first to look at the citation for KBR's contention. It cites the section E of their brief, and then section E of their brief cites the page 6345 of the record. And what that's taken from is a gentleman by the name of Glenn Butte. And here's his actual testimony in front of the Democratic Senate Policy Committee, which incidentally was unsworn, not under oath testimony. And he says, as soon as we arrived, we saw orange powder on the ground throughout the plant. My engineering squad didn't note the powder on our assessment of the plant because we didn't know what it was. And then Mr. Butte goes on. We ended up recommending that the Army build a new plant because it would have taken too much time and money to One, it's unsworn testimony that's incompetent under Federal Rule 56. And two, it says the exact opposite. It says the military didn't know what the sodium dichromate was. He didn't know what it was. And they decide in their recommendation about restoring Karmat Ali had nothing to do with the sodium dichromate there. It had to do with how dilapidated the plant was and just the challenge of restoring it. But put all that aside, let's say KBR is correct in their characterization. What that would do is give rise to a viable, admittedly a very formidable causation defense, and it would make it very difficult for plaintiffs to prove that KBR approximately caused their injuries. What it would not do is force a jury to sit in judgment of the military's decision whether or not to restore Karmat Ali. And that's pretty much the dispositive aspect. Finally, I'd briefly like to say a few words about the patent activities exception, Your Honor. The district court quite reasonably recognized that there's all these tests out there. This is, as I'm sure the court is aware, a very active area of the law right now. But it kind of went above all that and around all that and said all of these tests apply the standard of the actions at issue must be necessary to and direct connection with actual hostilities. And the district court reasonably concluded that the restoration of a civilian water injection facility doesn't meet that standard. I think her language was it's not something that aided warriors to swing the sword of battle, but instead was an action that helped restore actions after hostilities had ended. But it was surely part of the completion of the military mission or in furtherance of the military mission. I would agree with that, Your Honor. It was in furtherance of a military mission. But the important caveat to that, Your Honor, is to me to attest to my knowledge every circuit has blessed, including this one, it's not just a military mission. It has to be in furtherance of actual hostilities. And incidentally, not just in furtherance Well, but you had you had you had active military personnel there. That's correct, Your Honor. And that's one of KBR's argument is, well, wait a minute, you've got soldiers there with rifles patrolling a facility. That sounds a lot like combat. And they're right in that sense. I mean, soldiers patrolling with a rifle. But the combatant activities exception test doesn't look at the actions of the soldiers. If that's true, if that were the case, literally any case involving an active duty soldier would give rise to the combatant activities test. And I think this comes from SALA. KBR cited cases SALA. And I'm quoting from SALA, where That's the D.C. Circuit. It is, Your Honor. I'm sorry, I should have. SALA states, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities will be preempted. KBR wasn't at Karmat-Ali to assist soldiers guarding the perimeter. They were there simply to get the water flowing from the Tigris and water to miles out into the desert to restore oil production. Okay. The contractor's activities here did not revolve around the actions. And again, and if it did, it would do the if that were the test, it would contravene the intent of Congress, because it would give rise to basically blanket immunity for all contractors. And the language of the combatant activities exception specifically indicates that contractors are not immune under the Act. Thank you, Your Honors. All right. Thank you, sir. Mr. Harris, you're up. May it please the Court. Plaintiff's claims should have been dismissed at the outset, both because this suit can't be resolved without questioning sensitive military judgments on the battlefield in Iraq and because plaintiff's claims are preempted. Ultimately, the District Court correctly granted summary judgment on the merits for lack of sufficient evidence of causation. I'll address three issues. First, because KBR was entitled to designate the military as responsible third party, the political question doctrine bars this suit. This is a jurisdictional issue that the Court must address first. Second, the combatant activities exception to the Federal Tort Claims Act preempts this suit. And third, plaintiffs failed to meet the standard for proving causation under Texas law. Turning to the first issue, this suit should have been dismissed under the political question doctrine. Numerous strategic decisions by the U.S. military were central to KBR's causation defense. In fact, the District Court expressly made the following fact findings. First, the military was involved in the sodium dichromate exposure that allegedly caused plaintiff's injuries. Second, the military was responsible for assessing sodium dichromate hazards at Karmat-Ali prior to KBR's arrival. And third, the military was involved in detecting and responding to the presence of sodium dichromate at Karmat-Ali. These findings alone confirm that the military's contribution to causation makes this case non-judiciable. The District Court violated this Court's instruction in Lane by focusing solely on how plaintiffs would try the case and ignoring how KBR would defend it. The District Court also erred by denying KBR's request to designate the military as a responsible third party. KBR's entitlement to designate the U.S. military as a responsible third party reinforces that this case is non-judiciable. As a preliminary matter, KBR disagrees with the Third Circus decision in Harris that bases justiciability on whether a particular state happens to have a joint and several liability scheme or a proportionate liability scheme. But even under Harris, this suit is not justiciable. The Harris Court specifically said, if Texas law applies, then damages cannot be determined without evaluating unreviewable military decisions. And here, the parties agreed that Texas law applies, and Texas law entitles KBR to have the jury allocate fault between KBR and the U.S. military. This would require the jury to second-guess the military judgments. Every court to address this issue has indicated that the political question doctrine applies in this situation. The Texas statute allows KBR to designate any person that allegedly caused or contributed to causing the plaintiff's harm, whether through a negligent act or omission or other conduct that violates an applicable legal standard. As this court recognized in Fisher, the statute allows the designation of a responsible third party even if the court lacks jurisdiction over the third party and even if that third party is immune from suit. And Texas case law is also very clear on this point. The fact that the U.S. military could not be sued or held liable for negligence doesn't mean that it cannot be designated as a responsible third party. All that KBR had to do is allege enough facts to satisfy Texas's liberal notice pleading standard. What do you do with the Lane case? What aspect of Lane, Your Honor? About application of traditional tort principles to resolve the controversy rather than examining any military decisions. Going back to Harris, and I hope I'm answering the court's question, we don't believe that the approach in Harris is right. We believe that the broader application under Lane is the correct analysis and you don't have to get to Harris. But again, at a minimum, we went under Harris. In Lane, this court said you have to look at how the case had to be tried. And KBR is going to try its causation defense the same way, whether the jury is being asked to assign a proportionate liability number or whether it is under a general causation like a sole proximate cause. In a joint and several liability scheme, the jury might not be second-guessing the military's conduct in the same way it would be in a proportionate liability scheme, but the second-guessing is still going on, at least implicitly, because the jury is being asked to determine whether the military is 100% to blame. And that is still invasive and judgmental, and just as yet, whether the government is 100% responsible or whether under a proportionate liability scheme, the jury is 80% or 60% or 90% responsible. So it's a fiction to say that sole proximate cause wouldn't intrude on military judgment. So under this court's decision in Lane, we believe that there would be preemption. But at a minimum, under Harris, because of the military's actions, I hope that answered your question, Your Honor. Let me make sure I understand what you're saying. You disagree with Harris, which presumably would mean you disagree with the analysis, but you went under Harris. That's right, at a minimum. We believe that the broader approach is the correct approach. If you look at Lane and you look at the political question doctrine, the political question doctrine should not turn on solely whether a state has a proportionate responsibility scheme or whether it has a joint and several liability scheme. That in either situation, you are still questioning the military's judgments, and that is invasive and that violates political question doctrine. But putting that issue aside and assuming that Harris is correct and just assuming that, because again, we disagree with it, Harris said we need to look at state law. And if state law has a proportionate liability scheme, then, as the court said in Harris, if Texas law applies, then damages cannot be determined without evaluating unreviewable military decisions. So even under Harris, there's a proportionate liability scheme in Texas. KBR was entitled to designate the U.S. military as a responsible third party. That means the jury directly has to assess a number. The jury is going to be determining how much fault to be placed on the U.S. military. And Harris says that violates the political question doctrine. So, yes, at a minimum, we went under Harris. We disagree. We think the broader approach is the correct approach. And KBR here, all that KBR had to do was to plead sufficient facts to put the plaintiffs on notice that we were claiming that the U.S. military was negligent. And once that is done, designation is mandatory. The statute says, quote, the court shall grant leave to designate the person as responsible third party. And here, KBR alleged sufficient facts to show that the military had a causal role in plaintiffs' As a matter of law, the district court erred in denying KBR's request to designate the military as a responsible third party. In the district court, plaintiffs only raised two objections to KBR's designation. And they now abandoned both of them. Instead, now for the first time on appeal, the plaintiffs are making a new argument. And that argument conflates the standard for designating a responsible third party with the separate question of whether the designation would make the case non-justiciable. They now claim that the military cannot be designated as responsible third party because no applicable legal standard applies to the military's conduct. But that's a circular argument. Essentially, what they're claiming is the political question doctrine doesn't apply because the political question doctrine bars the designation of the military as responsible third party. In other words, what they're arguing is that the political question doctrine would bar KBR's defense so as to allow plaintiffs' claims to go forward. That confuses the standard for designating a responsible third party with the separate question of whether the designation once made makes the case non-justiciable. To obtain the designation, KBR only had to allege sufficient facts to show that the military was either negligent or violated some applicable legal standard, and that the negligence or violation caused or contributed to cause plaintiffs' harm. And KBR here did that. KBR quoted the DODIG's conclusions that the Army's inadequate preparation caused plaintiffs' exposures, that the military did not effectively address environmental hazards found prior to beginning work, and that the military's response to what he'd say about his causation arguments. If the court reaches the merits, it should still affirm on causation. There's no dispute the Texas law applies here. In the Texas law, Habner prescribes the type of evidence that's necessary to prove causation. Plaintiffs here didn't meet the requirements of Habner. Habner requires two epidemiological studies that show plaintiffs' exposures doubled the risk of their conditions. Plaintiffs cited one study by Gibb. That study didn't show the doubling of the risk for any condition. And in fact, they don't even claim a doubling of the risk for any plaintiffs except for one. And even if they had the Habner-compliant studies, they also had to show that the exposures of the plaintiffs were substantially similar to the exposures in the studies, which they also didn't do. Plaintiffs didn't show that their dosage was comparable to the subjects in any study, and plaintiffs' experts didn't even attempt to quantify dosage. Plaintiffs had short-term outdoor environmental exposures to sodium dichromate particulate matter, whereas in the study, the subjects had indoor full-time occupational exposure to chromate mist. And because they felt both of those prongs of Habner, the district court's judgment should be affirmed. Plaintiffs attempt to make an end-run around Habner by relying on a differential diagnosis, but no authority allows the plaintiffs to use a differential diagnosis to avoid Habner. A differential diagnosis establishes specific causation, not general causation. And the first step of a differential diagnosis requires the expert to rule in a cause, but you can't rule in a cause until you first prove general causation, and Habner tells us what we have to do to prove general causation. You have to have two studies showing a doubling of the risk, and you have to show that your exposures were substantially similar. So because plaintiffs didn't meet Habner, Carson's specific causation opinions are immaterial. I also want to address the sua sponte argument that was raised. We heard from plaintiffs that KBR did not address their argument in KBR's brief that the district court relied on two grounds, sua sponte, and in fact KBR did. It's in page 43 of KBR's brief, the first full paragraph. And as KBR said in its brief, there was no surprise that the district court rejected Carson's duration of exposure only approach. KBR, in fact, in the district court challenged plaintiffs' self-reported time at Karmat Ali. This is the same thing as the exposure category that they're complaining that the district court ruled on sua sponte. KBR raised that argument in the district court. It was raised. The court ruled on it. Plaintiffs were put on notice. That is all that's required. And even if plaintiffs weren't put on notice of that claim, there are still other bases on which the district court ruled that the summary judgment could be affirmed. I mean, for example, the district court expressly ruled on the second prong of Havner, and that's in the record at page 17229. That alone, that one factor alone is a sufficient basis for affirming causation because the plaintiffs didn't satisfy Havner. The court specifically held that the second requirement of Havner wasn't met. The court, therefore, said it didn't need to address the third prong of Havner. So the district court didn't rule sua sponte. The plaintiffs were put on notice. But even if that were true, there are other independent bases on which the district court's judgment can be affirmed. Well, the district court, in your mind, construed the evidence in a light most favorable to the plaintiffs in doing the analysis on the Havner nonetheless found against them? Absolutely. And that was argument. Havner was the main issue raised on causation in the district court. The district court expressly ruled on Havner. That's sufficient for upholding the summary judgment on the merits. Let me turn back to the combatant activities preemption. The plaintiffs were arguing about whether the conduct here rises out of the combatant activities of the military. The district court apparently thought that preemption is limited to actions taken during actual combat. But that's the wrong standard. Under Johnson, the test is whether Project RIO involved activities both necessary to and in direct connection with actual hostilities. Here, the commander of Project RIO confirmed that the project was necessary to and directly connected with actual hostilities. He testified that Project RIO was part of Operation Iraqi Freedom, and that was a combat mission. And, in fact, there were actual hostilities here when KBR was performing its work. That's why the Army deployed plaintiffs to Karmad Ali to provide force protection while KBR was doing its work in an active war zone. And the fact that force protection was necessary shows that KBR's work arose out of the combatant activities. There are two tests for preemption. The first test was recently proposed by the U.S. government to the Supreme Court in two cases involving the Iraq War, and the second test comes from the D.C. Circus decision in Salih. Under either test, plaintiffs' claims are preempted. In the Supreme Court amicus briefs in the Harris and Burn Pit cases, the U.S. government argued that the claims against KBR arising out of its battlefield support services are preempted because they impair military effectiveness and judgments. In doing so, the government said that the preemption test used in Harris and Burn Pit was wrong because it was too narrow. And because this is a federal interest that would be frustrated, the views of the United States should be given great deference. The government advocated a two-part test that's directly against the government, and the challenge conduct is within the scope of KBR's contract with the military. As the government explains, the scope of preemption of claims against military contractors should be equivalent to the combatant activities exception. So under the government's test, plaintiffs' claims are preempted and should be dismissed. But even if this court doesn't use the government's test, the D.C. Circus preemption test in Salih also requires dismissal. Under the Salih test, a tort claim arising out of the contractor's engagement is preempted where a contractor is integrated into combat activities and over which the military retains command authority. Here, KBR was undoubtedly integrated into the military's combatant activities. And the plaintiff's claims also arise out of the military's command authority, specifically the Project Rio mission. And it can't be seriously disputed that the military retained command authority over Project Rio. For example, the Army retained direct control over KBR's managers to assure contract compliance. The military required KBR to follow its own chain of command. And the military supervised and controlled KBR's work on site. Salih makes clear that the military... It was still a performance-based contract, though, wasn't it? Not a contract based on precise specifications? No, Your Honor, we don't believe it was a performance-based contract. The way the regs work on a performance-based contract, the regulation says that a contract is not performance-based if it prescribes the manner in which work is to be performed. A performance-based contract looks solely at the purpose of the work, where the government just says, we need this widget that does this. You go do it, and you figure out how to do that. That's not what was happening here. Just because there is some discretion given to the contractor doesn't make it performance-based. The Rio contract had provisions specifying how KBR's work should be done and emphasizes military oversight. There are several provisions like KBR had to deploy to facilities after they're declared to be benign. The U.S. Army Corps of Engineers representatives are KBR's sole source of guidance. That's specifically stated in the contract. And KBR has to coordinate health and safety. So there was guidance. There were provisions in the contract. And the military, again, retained command authority over Project Rio. And because of that, that isn't a performance-based contract. There were specifications and guidelines that were given. And in Saleh, the court made clear that the military doesn't have to have exclusive operational control for preemption to apply. And that's where Harris misapplied the Saleh test. Saleh specifically says that a contractor's exercise of some influence over the operation doesn't undermine the federal interest behind preemption. So preemption applies even if a contractor retains some discretion over its work. So in addition to the political question doctrine on subject matter jurisdiction and the merits, this court should also dismiss the case because the combatant activities exception to the Federal Tort Claims Act preempts the case. Your Honor, I'd first like to address KBR's sua sponte contentions. They're now contending that the district court did or plaintiffs were aware of this because KBR challenged exposure categories as quote unquote a proxy for dose. The problem with that contention, Your Honor, is that the district court specifically blessed plaintiff's dose contention. The district court said, yes, plaintiffs presented sufficient evidence of dose. They noted that how contaminated Karmat Ali was. That's not why the district court dismissed the claims. Instead, they said that Dr. Carson didn't explain the connection between exposure categories and his causation conclusion. So that again, in fact, exposure categories wasn't even referenced in KBR's brief. Secondly, I'd like to address counsel's notation to Havner. He says the purpose of this is you've got to prove general causation. Well, that's just the problem for KBR here, Your Honor, is general causation is practically admitted by KBR's expert when KBR's expert readily acknowledges that, yes, sodium dichromate is a substance that we know that can cause these injuries. What Mr. Harris pointed out for Havner is that it requires two studies and you only produced one. At least that is his contention. That's correct. That's in circumstances where we're using these epidemiological studies to prove general causation. What we have here is a different circumstance, Your Honor, where we already know that the substance in question can cause the injury. This is admitted by KBR's expert. This was specifically recognized by the district court and is testified by experts. This is something science has known for the last 50 years, that this substance is capable of causing these injuries. In fact, I would agree with Mr. Harris in the sense that that's really what I think he spoke specifically. Havner concerns general causation, but that again, that's something as noted specifically by the district court. That's something that's already been established by science and recognized by plaintiffs. Third, I'd like to address Mr. Harris' contention that RTP is a circular argument by plaintiffs because they're using the political question doctrine to invalidate the political question doctrine assertion. Plaintiffs aren't doing anything so grandiose. What they're doing is simply looking at the statute. They're saying this is the predicate of the statute and as admitted in KBR's brief, that predicate is not met here. Okay, we're not, I don't know exactly what he means by saying we're using the political question doctrine to beat a political question doctrine invocation, but what I didn't hear from Mr. Harris is how there could be an applicable legal standard, particularly when KBR acknowledges that no such standard exists. Finally, with respect to the combatant activities exemption, in addition to everything else that has been said about the doctrine, I think it's very important to note how far we are straying from the command of Congress and the command of Boyle in adopting KBR's claimed preemption here. One, if you look at this section of the act, section 2671 of the act, Congress specifically exempts private contractors from this preemption. You might say, okay, well, you still look at Boyle. Boyle recognizes it in limited circumstances, but where Boyle recognizes this doctrine is in discretionary preemption rather than field preemption. Furthermore, in so doing, Boyle sets forth three elements of this test that reasonably complied with military decision-making or specifications. By definitions, Your Honor, if plaintiffs establish their claim on the merits, the elements of Boyle will not be met. That just shows how far we're drifting from Boyle. To that end, the United States Supreme Court nor this circuit has blessed the idea that we could have this field preemption that we're talking about here. I think the better case to do is if we're going to have this command, it should come from Congress or at the very least from the United States Supreme Court and say, okay, forget Boyle's elements. We're going to invoke this field preemption that in effect will be the same thing as sovereign immunity. Unless there are any further questions, that's all I have. Thank you, Your Honor.